Paul Shipp, #20263
Assistant Attorney General
Office of the Attorney General
Public Protection Division
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
Tel: 785-296-3751
Fax: 785-291-3699
paul.shipp@ag.ks.gov
Attorney for Plaintiff

PLAINTIFF'S EXHIBIT
1

**IN THE DISTRICT COURT OF ELLIS COUNTY, KANSAS**

| | |
|---|---|
| **STATE OF KANSAS,** ***ex rel.*** **KRIS W. KOBACH, Attorney General,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| **RODNEY RIPPE, an individual;** | ) **Case No. : EL-2025-CV-** |
| **and** | ) |
| **STRAIGHT LINE REMODELING, LLC, a Kansas for profit limited liability company,** | ) |
| **Defendants.** | ) |

**(Pursuant to K.S.A. Chapter 60)**

**PETITION**

COMES NOW the Plaintiff, State of Kansas, *ex rel*. Kris W. Kobach, Kansas Attorney General, by and through counsel, Paul Shipp, Assistant Attorney General, and for its cause of action against the Defendant Rodney Rippe, an individual and the Defendant Straight Line Remodeling, LLC, a for profit limited liability company, (collectively "Defendants") alleges and states as follows:

## PARTIES

1. Kris W. Kobach is the duly elected, qualified, and acting Attorney General for the State of Kansas.

2. The Attorney General's authority to bring this action is derived from the statutory and common law of the State of Kansas, specifically the Kansas Consumer Protection Act ("KCPA"), K.S.A. 50-623, *et seq.*

3. Defendant, Rodney Rippe, is an individual with a residential address in Hays, Kansas. He may be served with process at his residential address or wherever he may be found.

4. Defendant Straight Line Remodeling, L.L.C. is a Kansas limited liability company organized on June 9, 2011, Business ID No. 6540561. Its principal office and registered agent, Rodney Rippe, are located in Hays, Ellis County, Kansas 67601, and may be served wherever he is found.

5. Defendant Straight Line Remodeling, L.L.C. is a delinquent for-profit limited liability company previously registered with the Kansas Secretary of State, business ID 6540561, and forfeited on July 15, 2025. Defendant identified its principal office as 1625 Mount Pleasant Rd., Hays, Kansas 67601.

6. K.S.A. 17-6807(a) states that "[a]ll corporations, whether they expire by their own limitation or are otherwise dissolved, including revocation or forfeiture of articles of incorporation [...] shall be continued, nevertheless, for the term of three years from such expiration or dissolution or for such longer period as the district court in its discretion shall direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative[.] [...] With respect to any action, suit or prosecution [...] against the corporation either prior to or within three



Case 26-10671 Doc# 22-1 Filed 08/27/26 Page 2 of 25

years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation."

7. All references to Defendants herein include acts individually, in concert, or by or through employees, agents, representatives, affiliates, assignees, and successors of Straight Line Remodeling, LLC.

8. The Defendant, Rodney Rippe, formulated, authorized, controlled, operated, directed, or participated in the acts and practices of Straight Line Remodeling, L.L.C., including the acts and practices set forth herein.

## NATURE OF THE ACTION

9. All of the foregoing paragraphs are hereby incorporated by reference.

10. Plaintiff brings this action under the KCPA for injunctive relief, restitution, civil penalties, investigative fees, expenses, and such other relief as justice requires.

11. Since at least 2023 to the present, Defendants have contracted with Kansas consumers for residential remodeling and construction projects, accepted substantial advance payments or deposits, and then failed to perform the promised work or to refund unearned monies.

12. Defendants' conduct constitutes deceptive and unconscionable acts and practices in violation of K.S.A. 50-626 and K.S.A. 50-627.

## JURISDICTION AND VENUE

13. All of the foregoing paragraphs are hereby incorporated by reference.

14. This Court has subject-matter jurisdiction over this case, controversy and the parties under Kan. Const. art. 3, § 6(b), K.S.A. 20-301, K.S.A. 50-638(a) and K.S.A. 60-308(b), and personal jurisdiction over Defendants because they reside, transact business, and committed the acts complained of in Ellis County.

15. Venue is proper in Ellis County pursuant to K.S.A. 50-638(b) and K.S.A. 60-604(a) because Defendants conducted business and many of the consumer transactions at issue occurred in said county.

## ALLEGATIONS COMMON TO ALL COUNTS

16. All foregoing paragraphs are hereby incorporated by reference.

17. At all times relevant hereto, the KCPA prohibits Defendants, as suppliers, from engaging in deceptive and unconscionable acts or practices in connection with a consumer transaction, including solicitation of a consumer transaction, pursuant to K.S.A. 50-626 and K.S.A. 50-627.

18. At all times relevant hereto, each Defendant was a "person" and "supplier" as defined by K.S.A. 50-624(i) and (l) and engaged in consumer transactions in the ordinary course of business.

19. At all times material, Defendants engaged in "consumer transactions" in Kansas, as that term is defined by K.S.A. 50-624(c).

20. At all times material, Defendants engaged in consumer transactions with "consumers," as that term is defined by K.S.A. 50-624(b).

21. Defendants advertised, solicited, and entered into consumer transactions with Kansas homeowners for home-remodeling and construction services.

22. Defendants required consumers to pay cash advances on the contract price purportedly to purchase materials or "lock in" project scheduling.

23. Defendants abandoned at least eight consumer projects at all stages of completion, from having done no work at all, to being partially finished but incomplete, leaving subcontractors unpaid and consumers having paid in excess of the agreed to cost.

24. Defendants' bank records show that it was under severe financial distress between September 2023 and December 2024.

25. Notwithstanding their knowledge of acute cash-flow distress, Defendants continued to solicit new consumer deposits without disclosing their inability or likelihood of failure to perform.

26. Defendants diverted advance payments earmarked for labor and materials to unrelated expense knowingly impairing their ability to complete contracted work.

27. Defendants' business practices are deceptive and unconscionable violations of the KCPA.

28. Each consumer has suffered damages and is entitled to those damages. K.S.A. 50-632(3).

29. Defendants have refused or failed to make full restitution and should be ordered to do so.

## CLAIMS

### COUNT I
### Defendants' KCPA Violations against J.T. and A.T., Husband and Wife

30. Plaintiff incorporates by reference all allegations set forth above.

31. On September 12, 2023, the Defendants entered into a written contract for new home construction with J.T. and A.T., husband and wife, of Ellis County, Kansas.

32. The written contract between Defendants and J.T. and A.T. constituted a consumer transaction as defined by K.S.A. 50-624(c).

33. Prior to signing the contract J.T. and A.T. were assured by Defendants that they were running a reputable business where funds were segregated and that funds paid for one construction project would not be used to cover expenses of another construction project.

34. The written contract included an explicit written "Warranty" clause where Defendants agreed that they would pay all subcontractors hired by Defendants.

35. On October 27, 2023, Defendant, Rodney Rippe, texted consumers J.T. and A.T. with a proposition where he admitted that he was "having a hard time with money coming in from other jobs" and requested a $200,000.00 payment early.

36. On October 27, 2023, consumer J.T. inquired with Defendant, Rodney Rippe, directly as to whether he was bonded and he replied that he was.

37. Consumers J.T. and A.T., after they were assured by Defendants that he was bonded and that all subcontractors would be paid for their project, they provided the requested $200,000.00 via check to the Defendant, Rodney Rippe.

38. By November 2024, consumers J.T. and A.T. had paid to Defendants approximately 80% of the agreed cost to build their home; however, Defendants were substantially behind on the work.

39. Defendants agreed to make things right and so in lieu of requesting additional cash payments from J.T. and A.T., Defendants requested use of a credit card belonging to J.T. and A.T. to cover the cost of only supplies for their construction project.

40. After gaining use of the consumers' credit card, on December 18, 2024, the Defendant, Rodney Rippe, made an unauthorized purchase of a floor leveler from Adleta, for $14,228.78, for use on a construction project that was not for J.T. and A.T.'s project.

41. During the construction, subcontractors who were hired by Defendants to do work on J.T. and A.T.'s construction project complained that they were not getting paid; when consumers personally confronted the Defendant, Rodney Rippe, about the issue he repeatedly assured them the subcontractors would be paid.

42. Defendants abandoned J.T. and A.T.'s construction project in January 2025 leaving the home significantly unfinished.

43. Despite having paid Defendants over a million dollars for construction of their home, consumers, J.T. and A.T. were left with multiple subcontractor liens on their home totaling approximately $239,578.38, rendering consumers' title and investment severely damaged.

44. Consumers J.T. and A.T. paid an additional $501,483.94 to complete the home that Defendants agreed to build.

45. In addition to the costs to complete the home, consumers J.T. and A.T. identified $44,431.76 in "change orders not received," which included payments for upgraded materials, frameless glass doors, and pocket doors that Defendants failed to provide.

46. Furthermore, Defendants kept $20,000.00 in funds from an insurance claim intended to repair a shop floor, but Defendants failed to complete the work as promised.

47. Consumers J.T. and A.T. have suffered significant financial losses as a result of Defendants' deceptive and unconscionable business practices.

48. Defendants' oral and written representations that he would pay all subcontractors constitute a deceptive act or practice and a violation of K.S.A. 50-626(b)(2).

49. Defendants' oral and written representations that they were running a reputable construction business and would not divert funds from one construction project to pay for another constitute a deceptive act or practice and constitutes a violation of K.S.A. 50-626(b)(3), as it was a willful omission of the material fact.

50. Defendants' unauthorized use of consumers' credit card constituted a deceptive act or practice and a violation of K.S.A. 50-626(b)(3) as he willfully concealed his conversion of their funds.

51. Defendants' abandonment of consumers' construction project constituted an unconscionable act or practice under K.S.A. 50-627(b)(3) resulting in the consumers failing to receive a material benefit for work they paid Defendants to do.

52. Defendants' act of falsely representing via text message that he was "bonded" to induce the $200,000 early payment, in October 2023 constituted an unconscionable act or practice under K.S.A. 50-627(b)(6).

53. Consumers J.T. and A.T. have suffered significant financial losses and are entitled to restitution in the amount of $799,010.14.

54. As to consumers, J.T. and A.T., Defendants willfully committed no less than five (5) violations of the KCPA and should be ordered to pay the maximum civil penalties allowed of $10,000.00 for each of the 5 violations, for a total of $50,000.00.

## COUNT II
## Defendants' KCPA Violations against S.T. and T.T., Husband and Wife

55. Plaintiff incorporates by reference all allegations set forth above.

56. On November 16, 2023, the Defendants entered into a written contract for new home construction with S.T. and T.T., husband and wife, of Ellis County, Kansas.

57. The written contract between Defendants and S.T. and T.T. constituted a consumer transaction as defined by K.S.A. 50-624(c).

58. Prior to signing the contract consumers S.T. and T.T. were assured by Defendants that they were running a reputable business where funds were segregated and that funds paid for one construction project would not be used to cover expenses of another construction project.

59. The written contract included an explicit written "Warranty" clause where Defendants agreed that they would pay all subcontractors hired by Defendants.

60. After signing the contract with Defendants, the consumers S.T. and T.T. paid to Defendants a cash deposit of $110,000.00 in November 2023

61. Defendants assured consumers, S.T. and T.T., that the funds would be used for the materials to build their home.

62. Defendants immediately delayed starting on the agreed upon construction and requested additional cash funds before any construction would begin.

63. In August 2024 the consumers, S.T. and T.T., sold their existing home and paid the Defendant, Rodney Rippe, an additional cash payment of $110,000.00 using a construction loan they had taken out.

64. Finally, in November 2024, Defendants hired subcontractors to dig the basement of the home and to construct the basement walls and footings, which were poured concrete, the concrete floor was to be poured at a later date.

65. After only the basement walls and footings were poured in November 2024, the Defendants abandoned the project and performed no additional work.

66. The basement walls and footings have been subjected to the elements since the abandonment and are likely in need of replacement.

67. The Defendants failed to pay the subcontractors and one of them has placed a lien on the consumers' real estate in the amount of $14,883.18.

68. Consumers S.T. and T.T. are now paying for storage unit fees and monthly interest on a construction loan with no home to show for it.

69. Consumers, S.T. and T.T., have suffered significant financial losses as a result of Defendants deceptive and unconscionable business practices.

70. Defendants' oral and written representations that he would pay all subcontractors constitute a deceptive act or practice and a violation of K.S.A. 50-626(b)(2).

71. Defendants' oral and written representations that they were running a reputable construction business and would not divert funds from one construction project to pay for another constitute a deceptive act or practice and constitutes a violation of K.S.A. 50-626(b)(3).

72. Defendants accepted $220,000.00 in cash payments without any intent to provide the goods or services he promised and those acts constitute a deceptive act or practice and a violation of K.S.A. 50-626(b)(5).

73. The consumers, S.T. and T.T. received no material benefit from their transaction with the Defendants; the acts of the Defendants constitute an unconscionable act or practice and a violation of K.S.A. 50-627(b)(3).

74. Throughout 2024 the Defendants strung consumers S.T. and T.T. along making many misleading assurances that the work would be completed; Defendants' willful misleading statements constitute an unconscionable act or practice and a violation of K.S.A. 50-627(b)(6).

75. Consumers, S.T. and T.T., have suffered significant financial losses and are entitled to restitution in the amount of $234,883.18.

76. As to consumers, S.T. and T.T., Defendants willfully committed no less than five (5) violations of the KCPA and should be ordered to pay the maximum civil penalties allowed of $10,000.00 for each of the 5 violations, for a total of $50,000.00.

**COUNT III**
**Defendants' KCPA Violations against S.C.**

77. Plaintiff incorporates by reference all allegations set forth above.

78. On January 14, 2024, the Defendants entered into a written contract for new home construction with consumer S.C. of Rawlins County, Kansas.

79. Consumer S.C. is a protected consumer as defined by K.S.A. 50-676(a).

80. Consumer S.C. had interactions with the Defendant, Rodney Rippe, months prior to the signing of the written contract, as early as October 2023, where the Defendants repeatedly told consumer S.C. that all of his construction projects are separate and that he would not take money from one project and put it on another one.

81. The written contract included an explicit written "Warranty" clause where Defendants agreed that they would pay all subcontractors hired by Defendants.

82. Defendants required substantial cash payments before the work on consumers S.C.'s home; by the end of April 2024, consumer S.C. had paid to Defendants over $400,000.00 in cash.

83. After said payments were made by consumer S.C. to Defendants the Defendant, Rodney Rippe, asked for a loan from consumer S.C. of an additional $100,000.00 to finish another consumer's project, promising said funds would be credited to S.C.'s project.

84. It was not until December 16, 2024, that the basement of consumer S.C.'s home was finally poured by multiple subcontractors hired by Defendants.

85. Consumer S.C. learned that the subcontractors went unpaid and had to pay those subcontractors directly to avoid liens being place on his real estate, payments were made by consumer S.C. to:

a. Cahoj Earthmoving, $53,903.44 for digging the basement to this home.

b. Finley Construction/Atwood Lumber, $25,848.38 for concrete.

c. Gemini Trucking $5,193.30 for concrete pumping services.

86. Defendants abandoned consumer S.C.'s project in December 2024 and have refused to do any work or make any refunds.

87. Consumer S.C. has suffered significant financial losses as a result of Defendants deceptive and unconscionable business practices.

88. Defendants' oral and written representations that he would pay all subcontractors constitute a deceptive act or practice and a violation of K.S.A. 50-626(b)(2).

89. Defendants' oral and written representations that they were running a reputable construction business and would not divert funds from one construction project to pay for another constitute a deceptive act or practice and constitutes a violation of K.S.A. 50-626(b)(3).

90. Defendants took substantial cash payments from consumer S.C. without any intent to provide the goods or services he promised and those acts constitute a deceptive act or practice and a violation of K.S.A. 50-626(b)(5).

91. Throughout 2024 the Defendants strung consumer S.C. along making many misleading assurances that the work would be completed; Defendants' willful misleading statements constitute an unconscionable act or practice and a violation of K.S.A. 50-627(b)(6).

92. The Defendant, Rodney Rippe's act of soliciting a $100,000 loan from consumer S.C. with the misleading premise that the funds would be applied as a credit towards his project, further indebting the consumer, a statement upon which the consumer relied and constitutes an unconscionable act under K.S.A. 50-627(b)(6).

93. Consumer S.C. received no material benefit from their transaction with the Defendants; the acts of the Defendants constitute an unconscionable act or practice and a violation of K.S.A. 50-627(b)(3).

94. Consumers, S.C. suffered significant financial losses and is entitled to restitution in the amount of $560,539.55.

95. Defendants are subject to civil penalties up to $10,000 for each of the six (6) violations, and as consumer S.C. is a protected consumer, Defendants are subject to civil penalties and an enhanced civil penalty of $10,000 for each of those six (6) violations, for an aggregate amount of civil penalties totaling $60,000.00.

## COUNT IV
## Defendants' KCPA Violations against K.K. and K.K., Husband and Wife

96. Plaintiff incorporates by reference all allegations set forth above.

97. On February 3, 2024, the Defendants entered into a written contract for new home construction with K.K. and K.K., husband and wife, of Trego County, Kansas.

98. The written contract between Defendants and K.K. and K.K. constituted a consumer transaction as defined by K.S.A. 50-624(c).

99. Prior to signing the contract consumers K.K. and K.K. were assured by Defendants that they were running a reputable business where funds were segregated and that funds paid for one construction project would not be used to cover expenses of another construction project.

100. The written contract included an explicit written "Warranty" clause where Defendants agreed that they would pay all subcontractors hired by Defendants.

101. After signing the contract with Defendants, the consumers K.K. and K.K. paid Defendants an initial cash deposit of $90,380.00.

102. Defendants assured consumers, K.K. and K.K., that the funds would be used for the materials to build their home.

103. Defendants immediately delayed starting on the agreed upon construction and requested additional cash funds before any construction would begin.

104. On April 8, 2024 a second cash payment of $90,380.00 was received by Defendants from consumers, K.K. and K.K.

105. The groundbreaking, originally planned for April 2024 did not happen until May 2, 2024.

106. The work that followed progressed slowly in piecemeal fashion with long gaps between the foundation, framing and exterior work.

107. It wasn't until November 2024 that the house was finally closed in and substantially weather tight.

108. Throughout the construction period there were major contractual breaches, misrepresentations and unconscionable acts and practices.

109. Despite being given the funds to pay subcontractors the Defendants failed to pay subcontractors, including:

a. Auman Company, Inc., $50,000.00 for multiple subcontracted jobs, and

b. Primary Electric., $23,730.00 for electrical wiring.

110. Defendants completely abandoned consumers K.K. and K.K. on March 8, 2025, leaving them with home that was not finished.

111. Consumers, K.K. and K.K., have suffered significant financial losses as a result of Defendants deceptive and unconscionable business practices.

112. Defendants' oral and written representations that he would pay all subcontractors constitute a deceptive act or practice and a violation of K.S.A. 50-626(b)(2).

113. Defendants' oral and written representations that they were running a reputable construction business and would not divert funds from one construction project to pay for another constitute a deceptive act or practice and constitutes a violation of K.S.A. 50-626(b)(3).

114. Defendants took $268,928.53 in cash payments without any intent to provide the goods or services he promised and those acts constitute a deceptive act or practice and a violation of K.S.A. 50-626(b)(5).

115. Consumers, K.K. and K.K., made additional direct payments to third parties that Defendants should have made pursuant to the original construction contract, totaling $38,487.59.

116. The consumers, K.K. and K.K. received no material benefit from their transaction with the Defendants; the acts of the Defendants constitute an unconscionable act or practice and a violation of K.S.A. 50-627(b)(3).

117. Throughout 2024 the Defendants strung consumers K.K. and K.K. along making many misleading assurances that the work would be completed; Defendants' willful misleading statements constitute an unconscionable act or practice and a violation of K.S.A. 50-627(b)(6).

118. Consumers, K.K. and K.K. have suffered significant financial losses and are entitled to restitution in the amount of $132,951.99.

119. As to consumers, K.K. and K.K., Defendants willfully committed no less than five (5) violations of the KCPA and should be ordered to pay the maximum civil penalties allowed of $10,000.00 for each of the 5 violations, for a total of $50,000.00.

**COUNT V**
**Defendants' KCPA Violations against T.F.**

120. Plaintiff incorporates by reference all allegations set forth above.

121. On June 12, 2024, the Defendants entered into a written contract for a basement restoration project with consumer T.F. of Ellis County, Kansas; the total contract was supposed to cost $26,638.40.

122. The written contract between consumer T.F. and Defendants constituted a consumer transaction as defined by K.S.A. 50-624(c).

123. Prior to signing the contract Defendants assured consumer T.F. that they were running a reputable business where funds were segregated and that funds paid for one construction project were not used to pay for another construction project.

124. Defendant, Rodney Rippe, pressured consumer T.F. into paying the deposit immediately to hold T.F.'s place in line and he promised he would begin work immediately.

125. Consumer T.F. paid to Defendants a down payment of $13,319.20, representing 50% of the total with said funds promised to go towards purchase of supplies to start the project and to hold her spot.

126. Immediately after consumer T.F. signed the contract and paid the deposit to Defendants the Defendant, Rodney Rippe began to stall.

127. Four months after the initial deposit was made the Defendant, Rodney Rippe, made excuses about other larger projects being delayed and that when those were done he would begin consumer T.F.'s project.

128. Defendants never ordered any supplies for consumer T.F's project and completely abandoned T.F.'s construction in April 2025.

129. Consumer T.F. suffered a significant financial loss as a result of Defendants' violations of the KCPA.

130. Defendants' act of willfully omitting the material fact that his company was insolvent on June 12, 2024, and that he was unable to perform the contract constituted a deceptive act or practice and was a violation of K.S.A. 50-626(b)(3).

131. Defendants' act of taking a 50% down payment for a project that they had no intent of performing constituted a deceptive act or practice and a violation of K.S.A. 50-626(b)(5).

132. Consumer T.F. received no material benefit from the consumer transaction entered into with Defendants and the acts of the Defendants constitute an unconscionable act or practice and a violation of K.S.A. 50-627(b)(3).

133. Defendants' act of stringing consumer T.F. along throughout 2024 constitute an unconscionable act or practice pursuant to K.S.A. 50-627(b)(6) because she relied on Defendants' statements to her detriment.

134. The consumer T.F. is entitled to restitution in the amount of $13,319.20.

135. Defendants are subject to civil penalties up to $10,000 for each of the four (4) violations, for a total of $40,000.

**COUNT VI**
**Defendants' KCPA Violations against J.D.**

136. Plaintiff incorporates by reference all allegations set forth above.

137. On October 29, 2024, the Defendants entered into a written contract with consumer J.D., of Ellis County, Kansas, to build a shed and a patio cover at his home.

138. The written contract between consumer J.D. and Defendants constituted a consumer transaction as defined by K.S.A. 50-624(c).

139. Prior to signing the contract Defendants assured consumer J.D. that they were running a reputable business where funds were segregated and that funds paid for one construction project were not used to pay for another construction project.

140. At the time of signing, consumer J.D. paid $16,941.23, which represented 50% down, for the construction project.

141. Immediately after the contract was signed the Defendant, Rodney Rippe, made excuses to delay the project and strung consumer J.D. along.

142. On November 4, 2024, the Defendant, Rodney Rippe, falsely claimed that he had submitted paperwork to the City of Hays, Kansas for a building permit for the construction project.

143. Defendant, Rodney Rippe, falsely assured that the deposit was used to purchase all of the supplies needed to complete the project.

144. Consumer J.D. made demands for delivery of the purchased supplies; later, only a single trailer load of materials representing less than 20% of what was required, and included incorrect items for other construction projects, consumer J.D. could not use.

145. Eventually the Defendants entirely abandoned the project in April 2025 leaving consumer J.D. to do the project on his own and to hire third parties to help.

146. Consumer J.D. suffered a significant financial loss as a result of Defendants' violations of the KCPA.

147. Defendants' act of willfully omitting the material fact that his company was insolvent on October 29, 2024, and that he was unable to perform the contract constituted a deceptive act or practice and was a violation of K.S.A. 50-626(b)(3).

148. Defendants' act of taking a 50% down payment for a project that they had no intent of performing constituted a deceptive act or practice and a violation of K.S.A. 50-626(b)(5).

149. Defendants' act of falsely representing that he sent paperwork into the city of Hays to start the work permit constitutes an unconscionable act or practice and a violation of K.S.A. 50-627(b)(6).

150. The consumer J.D. received no material benefit from the consumer transaction entered into with Defendants and the acts of the Defendants constitute an unconscionable act or practice and a violation of K.S.A. 50-627(b)(3).

151. Defendants' acts of stringing consumer J.D. along throughout the fall and winter of 2024 telling him that the project would be completed constitute an unconscionable act or practice pursuant to K.S.A. 50-627(b)(6) because he relied on those statements of opinion to his detriment.

152. The consumer J.D. is entitled to restitution in the amount of $16,941.23.

153. Defendants are subject to civil penalties up to $10,000 for each of the alleged five (5) violations of the KCPA, for a total of $50,000.00.

## COUNT VII
## Defendants' KCPA Violations against D.S. and S.S., Husband and Wife

154. Plaintiff incorporates by reference all allegations set forth above.

155. On October 30, 2024, the Defendants entered into a written contract for a construction project to remodel and enlarge the front porch of the home of consumers D.S. and S.S., husband and Wife, of Ellis County, Kansas, including new windows, a new door and a gabled roof.

156. The written contract between Defendants and D.S. and S.S. constituted a consumer transaction as defined by K.S.A. 50-624(c).

157. Prior to signing the contract consumers D.S. and S.S. were assured by Defendants that they were running a reputable business where funds were segregated and that funds paid for one construction project would not be used to cover expenses of another construction project.

158. The written contract included an explicit written "Warranty" clause where Defendants agreed that they would pay all subcontractors hired by Defendants.

159. After signing the contract with Defendants, the consumers D.S. and S.S. paid Defendants an initial cash deposit of $33,870.31.

160. Defendants assured consumers, D.S. and S.S., that the funds would be used for the materials for their project.

161. The Defendant, Rodney Rippe, immediately delayed starting the project providing excuses like "sick kids, he had a funeral" and "back-ordered with the holidays".

162. On December 16, 2024, the Defendant, Rodney Rippe, sent a text message stating his crew would be pouring the concrete "tomorrow".

163. On December 17, 2024 a concrete truck from Hess Services arrived at consumers' residence, but no employee of Straight Line Remodeling, LLC was present.

164. In late December 2024 a concrete porch was finally poured but the dimensions were wrong and it was not right for the gable and roof structure and the concrete finish was not agreed to or done to specifications.

165. The Defendant, Rodney Rippe, entirely abandoned the project in the middle of March 2025.

166. On March 24, 2025, the Defendant, Rodney Rippe, assured consumers D.S. and S.S. that he would provide a full refund.

167. The last communication from the Defendant, Rodney Rippe, to consumers D.S. and S.S. was on April 7, 2025, a text message saying that "his lawyer is very slow, he knows."

168. Consumers, D.S. and S.S., learned from one of Straight Line Remodeling, LLC's employees, Shelton McCain, that he and other employees had not been paid for over three months and that the Defendant, Rodney Rippe, had been deducting health insurance premiums from their paychecks but employees actually had no health insurance.

169. The Defendant, Rodney Rippe, strung consumers D.S. and S.S. along the winter of 2024 and 2025.

170. Consumers, D.S. and S.S. suffered significant financial losses and are entitled to restitution from Defendants in the amount of no less than $25,870.31, representing the amount of the initial deposit paid of $33,870.31, minus the estimated value of the substandard concrete work that was done.

171. The Defendants' acts of willfully omitting the material facts that the business was insolvent and unable to pay suppliers/subcontractors and already in default with other consumers constituted a deceptive act or practice and a violation of K.S.A. 50-626(b)(3).

172. The Defendants' act of offering services without any intent to provide them constitute a deceptive act or practice and a violation of K.S.A. 50-626(b)(5).

173. The Defendants' act of willfully abandoning the construction project of consumers D.S. and S.S. left them with no material benefit and constituted a violation of K.S.A. 50-627(b)(3).



Case 26-10671 Doc# 22-1 Filed 08/27/26 Page 20 of 25

174. The Defendants' willful statements of material facts, including but not limited to statements of opinion which induced consumers D.S. and S.S. to rely, along with promises the project would be completed and assuring them they would get a full refund constituted a violation of K.S.A. 50-627(b)(6) because they relied on those statements of opinion to their detriment.

175. As to consumers, D.S. and S.S., the Defendants willfully committed no less than four (4) violations of the KCPA and should be ordered to pay the maximum civil penalties allowed of $10,000.00 for each of the four violations, for a total of $40,000.00.

## COUNT VIII
## Defendants' KCPA Violations against L.D.

176. Plaintiff incorporates by reference all allegations set forth above.

177. On December 10, 2024, the Defendants entered into a written contract for new home construction with consumer L.D., of Ellis County, Kansas.

178. The written contract between consumer L.D. and Defendants constituted a consumer transaction as defined by K.S.A. 50-624(c).

179. Prior to signing the written contract, the Defendant, Rodney Rippe, had many conversations with consumer L.D. about the state of his business because she expressed skepticism based on information she had heard in the area that he might be insolvent.

180. On or about December 9, 2024, to induce consumer L.D. into signing the construction contract, the Defendant, Rodney Rippe represented that his company was financially stable, dismissing her concerns and stating something like, "Everything's in good shape. You have nothing to worry about," and when asked about the risk of losing her money directly by consumer L.D. the Defendants stated absolutely not and indicated that would never happen.

181. After inducing consumer L.D. into signing, the Defendant, Rodney Rippe, took consumer L.D.'s $100,000 payment.



Case 26-10671 Doc# 22-1 Filed 08/27/26 Page 21 of 25

182. The Defendants indicated to consumer L.D. that the $100,000 deposit was needed to line up subcontractors to do the foundation and start to order materials months in advance to get better prices.

183. When work never began on consumer L.D.'s home the Defendants strung her along making additional deceptive statements.

184. On February 10, 2025 the Defendant, Rodney Rippe, sent an email rife with a misleading "pity story" to deflect blame, citing a "predatory lender" and a "difficult customer" as the cause of his problems concealing his own long-term financial mismanagement to consumer L.D.'s detriment.

185. In additional emails to consumer L.D. in February 2025 the Defendant, Rodney Rippe, falsely represented his legal and financial status by claiming he was "filing a restructure bankruptcy" and all actions were being run through a "restructure court".

186. Additionally, in emails to consumer L.D. by the Defendant, Rodney Rippe, he made the misleading statement that L.D.'s $100,000 deposit was "protected through the restructure" and that she was a "secured interest".

187. In March or April 2025, after consumer L.D. proposed a formal repayment plan, the Defendant, Rodney Rippe, falsely promised he would honor it, texting "Yes, I agree to the terms... I'm going to make this work." The Defendant then immediately defaulted on the first payment.

188. Consumer L.D. suffered a significant financial loss as a result of Defendants' violations of the KCPA.

189. Defendants' act of willfully misleading consumer L.D. before she signed and paid the deposit constituted a deceptive act or practice and was a violation of K.S.A. 50-626(b)(3).

190. Defendants' act of taking consumer L.D.'s $100,000.00 cash, down payment for a project that they had no intent of performing constituted a deceptive act or practice and a violation of K.S.A. 50-626(b)(5).

191. The Defendants' assurances to consumer L.D. that the $100,000 deposit was needed to line up subcontractors to do the foundation and start to order materials in advance to get better prices constitutes a deceptive act or practice and a violation of K.S.A. 50-626(b)(2).

192. The Defendants' misleading statements to consumer L.D. induced the consumer to rely on Defendants' opinion assuring her that her home would be built after taking her deposit constitute a deceptive act or practice and a violation of K.S.A. 50-627(b)(6).

193. An act or practice violates this act whether it occurs before, during or after the transaction. K.S.A. 50-627(a).

194. The email sent to consumer L.D. on February 10, 2025 with the misleading statements to conceal Defendants' long-term financial mismanagement constitute an unconscionable act or practice and a violation of K.S.A. 50-627(b)(6).

195. The emails sent to consumer L.D. by Defendant, Rodney Rippe, making the misleading statement that L.D.'s $100,000 deposit was "protected through the restructure" constitute an unconscionable act or practice and a violation of K.S.A. 50-627(b)(6).

196. The Defendant, Rodney Rippe's expression of agreement to the repayment plan he agreed to via text in March or April 2025, and his subsequent default on said agreement constitute an unconscionable act or practice and a violation of K.S.A. 50-627(b)(6).

197. Consumer L.D. received no material benefit from the consumer transaction entered into with Defendants and the acts of the Defendants constitute an unconscionable act or practice and a violation of K.S.A. 50-627(b)(3).

198. The consumer L.D. is entitled to restitution in the amount of no less than $100,000.00.

199. Defendants are subject to civil penalties up to $10,000 for each of the eight (8) violations, for a total of $80,000.00.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

A. Declare that Defendants' acts and practices violate the KCPA, pursuant to K.S.A. 50-623, *et seq*.

B. Enter a permanent injunction prohibiting Defendants, and any successors or assigns, from engaging in consumer transactions in the State of Kansas;

C. Defendants pay restitution to all consumers injured by Defendants' in an amount not less than $1,883,515.60, pursuant to K.S.A. 50-632(a)(3) and K.S.A. 50-632(c);

1. Consumers J.T. and A.T., Husband and wife, are entitled to judgment for restitution in the amount of $799,010.14.
2. Consumers S.T. and T.T., Husband and wife, are entitled to judgment for restitution in the amount of $234,883.18.
3. Consumer S.C. is entitled to judgment for restitution in the amount of $560,539.55.
4. Consumers K.K. and K.K., Husband and wife, are entitled to judgment for restitution in the amount of $132,951.99.
5. Consumer T.F. is entitled to judgment for restitution in the amount of $13,319.20.
6. Consumer J.D. is entitled to judgment for restitution in the amount of $16,941.23.
7. Consumers D.S. and S.S., Husband and wife, are entitled to judgment for restitution in the amount of $25,870.31.
8. Consumer L.D. is entitled to judgment for restitution in the amount of $100,000.00.

D. Defendants pay civil penalties of up to $10,000.00 for forty-two (42) violations of the KCPA, pursuant to K.S.A. 50-636, in the aggregate of $420,000.00.

E. Defendants pay enhanced civil penalties of $10,000.00 for each of the six violations involving the protected consumer, S.C., pursuant to K.S.A. 50-677, in the aggregate of $60,000.00;

F. Defendants pay reasonable expenses and investigative fees of $20,000.00 to the Office of the Kansas Attorney General under K.S.A. 50-632(a)(4) and 50-636(c);

G. Defendants pay all court costs, and;

H. Hold Defendants jointly and severally liable for the aforementioned violations.

I. Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Paul Shipp, #20263
Assistant Attorney General
Office of Attorney General
Public Protection Division
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
Tel: 785-296-3751
Fax: 785-291-3699
paul.shipp@ag.ks.gov
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury for all issues raised by this pleading, which are so triable.

Paul Shipp, #20263